The opinion was delivered at the March term, 1851.
Shaw, C. J.
The first question is, whether Leavitt, one of the insolvents, was, or within one year next preceding had been, a resident of Massachusetts, and subject to the operation of the insolvent laws. This is, of course, a question of positive law, and depends on the statutes.
It was held in the case of Claflin v. Beach, 4 Met. 392, that by the statute of 1838, c. 163, § 19, proceedings in invitum could not be enforced against any other person, than an actual resident within the commonwealth at the time of the application. This was decided in Berkshire, in September, 1842, in consequence of which, probably, the statute of 1844, c. 178, was passed, making various alterations in the preexisting provisions of the insolvent laws. This statute provides, in \ 9, several additional causes for which proceedings in invitum may be instituted; it gives the right to any creditor, who has a debt provable to the amount of $100, to petition; requires that notice should be given to the debtors; and it authorizes the master, if upon a hearing the facts are found to be true, forthwith to issue a warrant. It is provided in § 13, that whenever any debtor, against whom a petition for a process in insolvency may be preferred, shall have removed from the commonwealth, the proceedings may be instituted and prosecuted in the county in which he last resided therein, provided he had a residence in the commonwealth within one year next before the commencement of the process.
This statute obviously altered the law, as it stood when the case of Claflin v. Beach was decided, and gave the insolvent laws effect and the commissioner jurisdiction, in cases where *473 the insolvent, though not a resident at the time of the application, had been a resident within one year. This is an extension of the beneficial principles of the statute to a case where the debtor has suddenly changed his domicil, leaving unpaid debts and property undisposed of. It seems to be as useful to provide, that the law should extend to such a case, as to the case of a resident insolvent, or that of a deceased insolvent. The defect of the law as it stood before was, that the words of the statute did not give jurisdiction, unless the debtor was a resident. But the present provision is in harmony with the general laws of the commonwealth, authorizing adversary proceedings and valid judgments against one who has had a place of abode within the commonwealth. To what extent such proceedings and judgments will reach, and to what extent they may have an extra-territorial operation, either upon persons, or upon real or personal property, is a question distinct from that of the jurisdiction.
But whatever may have been the reasons actuating the legislature, in this enactment, we think the terms of it are clear, in extending the law to those who have had a recent residence in the state. We are limited to the inquiry, whether Leavitt became a resident of this state after leaving New Hampshire and before going to Missouri.
It has been argued, in behalf of the respondents, that residence is something different from, and something less than, domicil. If this be so under some circumstances, and in connection with a particular subject, or particular words, which may tend to fix its meaning (Harvard, College v. Gore, 5 Pick. 370) ; yet, in general, residence and domicil are regarded as nearly equivalent, and there seems to be no reason for making the distinction precisely in the present case.
The question of residence or domicil is one of fact, and often a very difficult one; not because the principle on which it depends, is not very clear; but on account of the infinite variety of circumstances bearing upon it, scarcely one of which can be considered as a decisive test. The principle seems to be well settled, that every person must have a domicil, and that he can have but one domicil for one purpose at the same time; it fol *474 lows, of course, that he retains one, until he acquires another, and that by acquiring another, eo instanti, and by that act, he loses his next previous one. Abington v. N. Bridgewater, 23 Pick. 170. The actual change of one’s residence, and the taking up of a residence elsewhere, without any intention of returning, is one strong indication of change of domicil. Thorndike v. Boston, 1 Met. 242. The actual removal of one, from another state to this, leaving a family therein, but with no intent of returning, is a change of domicil. Cambridge v. Charlestown, 13 Mass. 501.
It appears to us clear upon the evidence, that Leavitt left New Hampshire late in September or early in October, without any intention of returning; his business was broken up; his property was attached; and though he had probably previously intended to remain there, and was building a house for his residence, yet he had never occupied it; he and his wife were at board; and though not distinctly stated, it is probable, that the house and lot were attached with his other property. He went to Lynn in this state, where he was soon followed by his wife; hired part of a house, engaged a shop, and made arrangements to go into business; had a child born in Lynn; and soon after, in consequence of disappointment in getting the water-power he wanted, left Massachusetts, and went to Missouri. His wife remained in the house a few weeks after he left, paid rent for it for ten or twelve weeks, and then went to Lowell.
Without recapitulating the evidence more minutely, the court are of opinion, that Leavitt did acquire a domicil in this state. He left New Hampshire and his wife soon followed; he left without any intention of returning; and not with any definite intention of then proceeding to St. Louis. He remained about two months in Massachusetts with his wife, hired a house and shop, and commenced business. If his intentions and purposes, during that period, were oscillating and doubtful, between staying in Massachusetts and going to Missouri, this state of things could not vary the result. It would show, that he did not leave New Hampshire, with a definite intent to go to and reside in Missouri, merely passing through Massachusetts on his way. Leaving New Hampshire without a *475 definite intention to go to Missouri, and an actual residence here, before such intention was formed and acted upon, terminated his domicil in New Hampshire, and for the time being gave him a domicil in Massachusetts. The fact of actual residence, or personal presence, at a place, after having parted with a prior domicil, and before acquiring another, determines the domicil; and although it maybe very short, and frequently changed, that cannot affect the principle.
It was somewhat urged, that if these proceedings could be commenced anywhere in Massachusetts, it must be in the county of Middlesex, and not in the county of Essex, because at the time of their commencement, the wife of the insolvent had left Lynn and taken up her abode in Lowell. There seems to us no ground for this argument. The wife’s domicil may be governed by that of the husband, (Greene v. Greene, 11 Pick. 410); but the reverse is not true. The residence and domicil of Leavitt, whilst in this state, was at Lynn, and it was not changed by the subsequent removal of his wife with her child to Lowell. Besides, this is settled by the words of the statute of 1844, c. 178, § 13, that where the debtor shall have removed from the commonwealth, (as the petition avers that he had done, if he ever resided here,) “ the proceedings may be instituted and prosecuted in the county in which he last resided therein.”
We are then brought to the inquiry, whether proceedings can be had under the statute of 1838, c. 163, § 19, that is, proceedings in invitum, at the instance of creditors, to reach partnership property, when one only of the partners is resident in this state. It is beyond doubt, we think, that the statute can have no extra-territorial operation; but the mere fact, that McDaniel, one of these insolvent partners, resided in another state, will not, we think, prevent proceedings which may affect Leavitt’s own property, and his interest in the partnership property under his control. This results from the provisions of the insolvent laws with regard to partners. In respect to voluntary proceedings on the part of insolvents, there is an express provision in the statute of 1838, that one partner may apply to the commissioner, setting forth that he and the firm are in* *476 solvent, to initiate proceedings, which shall reach both his separate estate and his interest in the partnership estate; that both are to be administered and settled under such proceedings; and provision is made for proof both of separate and partnership debts, and for keeping distinct accounts of separate and partnership property. Barclay v. Phelps, 4 Met. 397. And it has been decided, in that and other cases, that a mere formal dissolution of partnership does not prevent the operation of the insolvent laws; so long as there are partnership debts, and partnership stock, the partners remain joint debtors, and the stock remains joint property; and there is no reason why the insolvent laws should not apply, in the same manner, in regard to past transactions, as if no dissolution had taken place.
The same rules apply to proceedings in invitum, when properly commenced, as to cases of voluntary applications, on the, part of insolvent debtors. The difference is in the commencement of the proceedings, not in their operation. The nineteenth section of the act of 1838, c. 163, after directing the cases in which application may be made by creditors and the mode of applying, the adjudication and warrant, directs that all the proceedings, after the execution of the warrant, shall be conducted in the same manner, as before provided in reference to proceedings commenced upon the petition of the debtor himself.
Is it then a valid objection to these proceedings, under the insolvent law against a resident of this state, that he has a partner not resident, who has not been a resident in this state, and who is not personally amenable to the laws of this state ? A person may be a partner, in several concerns, with persons in and out of the state; but this affords no reason, why he and hi 3 separate property, and also that part of his property involved in partnership transactions, so far as such property can be reached, either directly or through him, should be screened from the operation of the insolvent law. This law proposes to take possession of his separate property, and of his separate interest in the joint property, which can be reached, and to administer these interests equitably, and nothing more *477 Nor, as personal property has no locality, would it defeat the operation of the assignment, that such property is at the time out of the state. Whether the assignment would affect such property, either in right or possession, if in the possession or under the control of such foreign partner, is not now in question. The only question at present is, whether the proceedings here are legal and regular, not what their effec4" and operation may be, here or elsewhere.
If it were otherwise ; if it were held, that the insolvent laws do not apply to the case of a debtor, who is personally amenable to our laws, because there is a joint debtor, liable for the same debt, who is not personally amenable, the result would be, that creditors would be left, as before the act, to a race of diligence, in seizing and appropriating the debtor’s property; and one great purpose of the act, an equal distribution of the debtor’s property, would be defeated. The twenty-first section of the statute clearly contemplates the case where the debtor who is amenable has one or more partners in and out of the state. It is objected, that this construction would make the act operate upon foreign citizens. We are not to presume, that the legislature intended to exceed the just limits of legislative power, nor could such intention be earned into effect, had they entertained it; but the purpose was to carry out the policy of an insolvent law, as far as from the nature of the case it was practicable to do it, as well against partners as individuals. The assignment will apply to property within reach of the assignee; and it is sufficient for the present purpose, that there was partnership property within this state, subject to the operation of its laws, that the commissioner had jurisdiction, and the proceedings were regularly instituted; and it is not necessary now to inquire, whether the assignee can go into another state to reach property there, or how far the proceedings can operate in other states, or upon the rights of foreign residents. The court are therefore of opinion, that the fact that one partner resided in another state did not render the proceedings irregular, being instituted against a debtor, who had been a resident in this *478 state within a year, and within the provision of the statute oí 1844, c. 178. Petition dismissed.
Upon a suggestion of the respondents’ counsel, it was inserted in the decree, that the case should be remitted to the commissioner for proof of claims, &c., and to have all other proceedings therein in due course of law, with the same effect, as if they had not been delayed by the pendency o-{ this petition.